## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

JANE DOE 1, et al.,

     Plaintiffs,

v.

PAM BONDI, in her official capacity
as Attorney General of the United
States, et al.,

     Defendants.

Civil Action No.
1:25-cv-01998-VMC

## PRELIMINARY INJUNCTION ORDER AND OPINION

On April 18, 2025, the Court granted Plaintiffs' Amended Motion for a
Temporary Restraining Order ("TRO"). (Docs. 19, 23). Among other things, the
Court directed Defendants to reinstate Plaintiffs' student status and SEVIS
authorization, retroactive to March 31, 2025. (Doc. 23 at 15). Pursuant to the Court's
Order, Defendants filed a Notice of Compliance confirming that U.S. Immigration
and Customs Enforcement ("ICE") manually entered a system change in each
Plaintiff's SEVIS record stating the following: "Status changed per court order and
ICE direction. Retroactive to March 31, 2025." (Doc. 29). After careful consideration
of the Parties' arguments and submissions, the TRO is converted into a
preliminary injunction as to all 133 Plaintiffs.

I.      Background

A.      The F-1 Visa Program and SEVIS

The Immigration and Nationality Act ("INA") "sets the terms on which consular officers at U.S. embassies and consulates abroad may issue visas to both prospective 'immigrants' and 'nonimmigrants.'" *Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*, 50 F.4th 164, 169 (D.C. Cir. 2022) (citing 8 U.S.C. § 1201(a)(1)). "'Immigrant' visas are issued to foreign nationals intending to move to the United States permanently." *Id.* '"Nonimmigrant' visas are for foreign nationals seeking to come into the country temporarily for an identified purpose." *Id.* Under the INA, a foreign student may enter the United States in a nonimmigrant status to complete a course of study at an approved educational institution. 8 U.S.C. § 1101(a)(15)(F)(i); 8 C.F.R. § 214.2(f). If approved, the State Department will issue a visa allowing the student admission to the United States to pursue a course of study. *See* 22 C.F.R. § 41.61(b)(1). If admitted, the Department of Homeland Security ("DHS") may administratively classify the student as an F-1 nonimmigrant. 8 C.F.R. § 214.1(a)(2). One prerequisite to admission as an F-1 nonimmigrant student is the presentment of Form I-20, which is "issued in the student's name by a school certified by the Student and Exchange Visitor Program (SEVP) for attendance by F-1 foreign students." 8 C.F.R. § 214.2(f)(1)(i)(A). The F-1 student's Form I-20 is endorsed at the time of entry into the United States and

the F-1 student is expected to "retain for safekeeping the initial Form I-20 or successor form bearing the admission number and any subsequent Form I-20 issued to them." 8 C.F.R. § 214.2(f)(2).

Once admitted to the United States, an F-1 student is granted permission to remain in the United States for the duration of status (noted as D/S on the relevant document)[1] as long as they continue to meet the requirements established by the regulations governing their visa classification in 8 C.F.R. § 214.2(f), such as maintaining a full course of study and avoiding unauthorized employment. 8 C.F.R. § 214.2(f)(6). Students who complete their course of study are entitled to apply for optional practical training ("OPT") directly related to their major area of study, which if approved, enables them to remain for an additional year, or in cases of STEM degrees up to three years.[2] 8 C.F.R. § 214.2(f)(10)(ii).

Congress required that DHS "develop and conduct a program to collect from approved institutions of higher education . . . in the United States [certain information] with respect to aliens who have the status, or are applying for the

---

[1] Duration of status is defined as the time during which an F-1 student is pursuing a full course of study at an educational institution certified by SEVP for attendance by foreign students, or engaging in practical training following completion of studies, except that an F-1 student who is admitted to attend a public high school is restricted to an aggregate of 12 months at any public high school(s). 8 C.F.R. § 214.2(f)(5)(i).

[2] Additionally, some degree programs also allow students to work in their field of study during their course of study under CPT.

status, of [F-1] nonimmigrants . . . ." 8 U.S.C. § 1372(a)(1)(A). As a result, the Department of Homeland Security's Student and Exchange Visitor Program ("SEVP") created an online database known as SEVIS. SEVIS is a centralized database maintained by the SEVP and it is used to manage information on nonimmigrant students and exchange visitors to track their compliance with the terms of their status. Under 8 C.F.R. § 214.2(f)(6), Designated School Officials ("DSOs") must report through SEVIS to the SEVP when a student fails to maintain status as described in the Code of Federal Regulations, such as engaging in unauthorized employment, providing false information to DHS, or being convicted of a crime of violence with a potential sentence of more than one year. 8 C.F.R. § 214.1(e)-(g). A student who fails to maintain status is removable. 8 U.S.C. § 1227(a)(1)(C)(i).

Separately, the Code of Federal Regulations permits the termination of nonimmigrant status in three specific circumstances: (1) a previously granted waiver under section 212(d)(3) or (4) of the Act is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS published a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. 8 C.F.R. § 214.1(d); *see also Jie Fang v. Dir. U.S. Immigr. & Customs Enf't*, 935 F.3d 172, 185 n.100 (3d Cir. 2019).

4

Accordingly, the revocation of an F-1 visa does not constitute failure to maintain status pursuant to the relevant regulations and does not provide a basis to terminate F-1 student status under the SEVIS registration system.[3] Instead, if the visa is revoked, the student is permitted to continue to pursue their course of study in school, but upon departure from the United States, the SEVIS record is terminated, and the student must obtain a new visa from a consulate or embassy abroad before returning. *See* Guidance Directive 2016-03, 9 FAM 403.11-3 —VISA REVOCATION (Sept. 12, 2016). Put differently, F-1 student status and F-1 student visas are not one in the same. The F-1 student visa refers only to the document that nonimmigrant students receive to enter the United States, whereas F-1 student status refers to the students' formal immigration classification once they enter the country.

### B.    Defendants Terminate Plaintiffs' Records in SEVIS

Here, Plaintiffs are all F-1 student visa holders actively enrolled in colleges and universities throughout the United States, or who have obtained lawful OPT to work under the terms of their student status. (Doc. 15 ¶¶ 6, 9–27). Between April 1, 2025 and April 14, 2025, Plaintiffs received notification from their schools' DSOs informing them that SEVP terminated their SEVIS record and marked Plaintiffs as

---

[3] *See* ICE Policy Guidance 1004-04—Visa Revocations (June 7, 2010) ("[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record.").

either "OTHER – Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated" or, "Otherwise Failing to Maintain Status" with a narrative citing deportability provisions under 8 U.S.C. § 1227(a)(1)(C), for failure to maintain status, and 8 U.S.C. § 1227(a)(4)(C)(i), for foreign policy grounds. (Doc. 1 ¶ 2).

In the absence of clear communication from Defendants regarding the reason for their SEVIS record termination, Plaintiffs have been left to speculate that their terminations stem from arrest records relating to various misdemeanors, dismissed charges, and traffic citations and as such, have produced evidence relating to the status of those infractions.[4] (*See* Docs. 19-2-19-5). Many of the charges against Plaintiffs were dismissed. Regardless of the conduct alleged, Plaintiffs do not have any criminal history that would warrant their SEVIS records being terminated. Nonetheless, many of the emails from Plaintiffs' DSOs direct Plaintiffs to leave the United States with little notice to prepare to do so. Without a current SEVIS record, Plaintiffs effectively have no legal status and therefore face

---

[4] A sample of Plaintiffs' records include: driving with a suspended or expired license, use of false identification, speeding, driving without insurance, underage alcohol consumption, petty shoplifting or retail theft, driving on a learner's permit, failing to yield, illegal parking, reckless driving, misdemeanor domestic battery or assault, misdemeanor battery, public intoxication, trespass in the second degree, simple assault, disorderly conduct, improper turning, failure to maintain a lane, larceny. (*Id*.). At least one Plaintiff suspects the termination is the result of a mental health crisis where emergency services were called. (*Id*.).

uncertainty about being able to attend classes, graduate, obtain and maintain employment, and keep housing and insurance.

In some, but not all of these cases, the State Department has revoked the student's visa. But as the Court previously explained, the revocation of a visa does not necessarily impact the person's lawful presence in the country. As such, Plaintiffs allege that it is the SEVIS record termination that has rendered them vulnerable to devastating immigration outcomes such as detention and deportation, as well as irreparable harm.

### C.    Procedural Background

On April 11, 2025, seventeen Plaintiffs filed this action. (Doc. 1). Four days later, Plaintiffs amended their Complaint to add 116 Plaintiffs, bringing the total number of Plaintiffs to 133. (Doc. 11). In their four-count Complaint, Plaintiffs seek declaratory and injunctive relief that Defendants violated the Administrative Procedure Act ("APA") when they terminated their records on improper grounds, without prior notice, without an articulated basis for their decision, and without providing Plaintiffs an opportunity to respond. (*Id.* ¶¶ 180-182). Plaintiffs contend that Defendants acted in an arbitrary and capricious manner, inconsistent with the intent and plain language of the Immigration & Nationality Act and its associated regulations, as well as in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution. (*Id.* ¶¶ 183-195). The original 17

Plaintiffs moved for a TRO and expedited preliminary injunction to temporarily enjoin Defendants from terminating their student status in the SEVIS system and to require Defendants to set aside their termination decisions. (Doc. 4). Plaintiffs amended their motion seeking a TRO and injunction for all 133 Plaintiffs. After considering the briefing and the arguments raised by the Parties at the hearing, the Court granted the TRO on April 18, 2025. (Doc. 19). A hearing on Plaintiffs' request for a preliminary injunction was held on April 24, 2025. In advance of that hearing, Plaintiffs provided two supplemental affidavits. (Doc. 31). Defendants did not submit any additional evidence. The Court also held a status conference wherein the Parties confirmed that there had been no discussions between them regarding Plaintiffs' requested relief, and that the Court needed to rule on the preliminary injunction. (Doc. 39).

## Discussion

## II.    Venue

In its Order granting the TRO, the Court noted that it would consider Defendants' argument on venue, and if appropriate, dissolve the TRO as to the nonresident plaintiffs. Accordingly, the Court will first address the issue of venue.

Defendants argue that venue is improper in this district as to the claims by Plaintiffs who are located in states other than Georgia.[5] (Doc. 24). As such, Defendants request that the Court deny the non-Georgia Plaintiffs' request for relief and dismiss them without prejudice or, in the alternative, transfer their claims pursuant to 28 U.S.C. § 1404(a) to an appropriate district court.[6] Defendants contend that since Plaintiffs are nonresident aliens, no plaintiff can establish residence in Georgia. Thus, the venue provision that Plaintiffs rely upon, 28 U.S.C. § 1391(e)(1)(C), does not apply because it provides that a case may be brought in any judicial district in which at least one plaintiff "resides." 28 U.S.C. § 1391(e)(1)(C). Defendants do not, however, contest the venue for the 27 plaintiffs that are physically present in Georgia. (Doc. 24 at 3 ("Defendants' position is that venue is not proper as to the 106 Plaintiffs who are located outside of Georgia.")).

The Court will treat Defendants' response as a 12(b)(3) motion to dismiss based on "improper venue." Federal Rule of Civil Procedure 12(b)(3) allows a defendant to challenge the propriety of the venue selected by a plaintiff by filing a motion to dismiss on the ground of improper venue. *See* Fed. R. Civ. P. 12(b)(3).

---

[5] Defendants' argument on venue was made in response to supplemental briefing the Court requested from Plaintiffs addressing the same. (Docs. 9, 12).

[6] During the TRO hearing, Defendants suggested that the nonresidents' claims would be appropriately transferred to the District of Columbia. Or, alternatively, that individual plaintiffs should seek to join in the ongoing litigation throughout the nation in the state where they are physically present.

When venue is challenged by a Rule 12(b)(3) motion, the plaintiff has the burden of showing that venue in the forum is proper. *See Delong Equip. Co. v. Wash. Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988) (stating that plaintiff must make a prima facie showing of venue). As with a motion to dismiss in general, a court must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004). "If an allegation in the complaint is challenged, 'the court may examine facts outside of the complaint to determine whether venue is proper' and 'may make factual findings necessary to resolve motions to dismiss for improper venue.'" *In re Blue Cross Blue Shield Antitrust Litig.*, 225 F. Supp. 3d 1269, 1290 (N.D. Ala. 2016) (quoting *Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008)). "Where conflict exists between the allegations in the complaint and evidence outside the pleadings, the court 'must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff.'" *Capital Corp. Merch. Banking, Inc. v. Corp. Colocation, Inc.*, No. 6:07-cv-1626-Orl-19KRS, 2008 WL 4058014, at *1 (quoting *Wai*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004)).

Typically, venue for civil actions in federal courts is governed by 28 U.S.C. § 1391, "except as otherwise provided by law." 28 U.S.C. § 1391(a). In actions against the United States, including agencies or officers, venue is proper "in any judicial district in which (A) a defendant in the action resides, (B) a substantial part

of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1). For venue purposes, a federal agency or officer resides where it "performs its official duties." *Brahim v. Holder*, No. 13-23275-CIV, 2014 WL 2918598, at *2 (S.D. Fla. June 26, 2014); *A.J. Taft Coal Co. v. Barnhart*, 291 F. Supp. 2d 1290, 1307 (N.D. Ala. 2003).

Generally speaking, improper venue is a waivable defense. Fed. R. Civ. P. 12(h)(1). "In a typical waiver scenario" this defense is abandoned when a defendant fails to raise it in either a responsive pleading or a Rule 12 motion. *Matthews v. Brookstone Stores, Inc.*, 431 F. Supp. 2d 1219, 1223 (S.D. Ala. 2006) (citing *Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino*, 447 F.3d 1357, 1364 (11th Cir. 2006)); *Lipofsky v. N.Y. State Workers Comp. Bd.*, 861 F.2d 1257, 1258 (11th Cir. 1988)). However, a defendant may also waive an improper venue defense "by express waiver, by conduct amounting to waiver as a matter of law, or by failure to interpose a timely and sufficient objection." *United States for use and benefit of NetPlanner Sys. v. GSC Constr., Inc.*, No. 4:16-CV-150 (CDL), 2017 WL 3000027, at *1 (M.D. Ga. Apr. 3, 2017) (citing *Manley v. Engram*, 755 F.2d 1463, 1488 (11th Cir. 1985)).

Here, Defendants expressly assent to venue in this district in their briefing. (*See* Doc. 24 at 5 (noting that "Defendants, therefore, do not contend that venue in

this judicial district is improper for the Plaintiffs located in Georgia" even though six Plaintiffs are located outside of this judicial district)). Defendants reiterated this during the April 24 hearing when they stated: "In this case, we've not opposed to having anyone that's within the state . . . Everyone within a state would logically be . . . grouped together for venue purposes." As such, the Court finds that venue in the Northern District of Georgia is proper.[7]

---

[7] In the absence of Defendants' waiver of venue, the Court would have still determined that venue was proper in this district pursuant to 28 U.S.C. § 1391(e)(1)(B), which permits a civil action in which a defendant is an officer or employee of the United States where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(e)(1)(B). Transactional venue under 28 U.S.C. § 1391(e)(1)(B) is assessed as it is in the general venue statute, 28 U.S.C. § 1391(b)(2). *E.V. v. Robinson*, 200 F. Supp. 3d 108, 113 n.2 (D.D.C. 2016) ("Because § 1391(e)(1)(B) is identical to 28 U.S.C. § 1391(b)(2), cases construing that general venue provision are 'helpful in construing this provision.'"(quoting 14D Charles Alan Wright et al., Federal Practice and Procedure § 3815 (4th ed. 2013))). The Eleventh Circuit has explained that "[o]nly the events that directly [gave] rise to [the] claim [were] relevant. And of the places where the events [took] place, only those locations hosting a 'substantial part' of the events [were] to be considered." *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003). The events considered relevant are only those acts and omissions that have a close nexus to the wrong. *Id.* at 1372. The Eleventh Circuit underscored that the inquiry should "focus on relevant activities of the defendant, not of the plaintiff." *Id.* at 1371–72.

In this case, Plaintiffs assert causes of action for violations of the Fifth Amendment to the United States Constitution and the Administrative Procedure Act stemming from the termination of their SEVIS records. Plaintiffs argue that because SEVIS terminations were communicated through Georgia-based DSOs and because Defendants notified some DSOs of the terminations, a substantial part of the events giving rise to the claims took place in this district. Defendants devote little time to rebutting Plaintiffs' claim that a substantial part of the events or omissions giving rise to Plaintiffs' claim occurred in Georgia. And when asked by the Court where the events giving rise to Plaintiffs' claims took place, Defendants could not

The Court also finds that permissive joinder of the remaining non-Georgia Plaintiffs is appropriate because Plaintiffs assert claims that arise out of a series of transactions common to the action of the parties where venue is proper with this Court. Fed. R. Civ. P. 20. A party seeking joinder of claimants under Rule 20 must establish two prerequisites: 1) a right to relief arising out of the same transaction or occurrence, or series of transactions or occurrences, and 2) some questions of law or fact common to all persons seeking to be joined. Fed. R. Civ. P. 20(a). The Eleventh Circuit has explained that the central purpose of Rule 20 is to promote trial convenience and expedite the resolution of disputes, thereby eliminating unnecessary lawsuits. *Alexander v. Fulton Cnty.*, 207 F.3d 1303, 1323 (11th Cir. 2000), *overruled on other grounds by Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003). Additionally, the Supreme Court has instructed lower courts to employ a liberal approach to permissive joinder of claims and parties in the interest of judicial economy: "Under the Rules, the impulse is towards entertaining the broadest

---

provide an answer because Defendants do not know. Therefore, venue is proper pursuant to 28 U.S.C. § 1391(e)(1)(B).

Finally, Defendants' reliance on the recent decision from the District Court for the Western District of Wisconsin is misplaced. There, the court explained that plaintiffs included no facts to show that venue was proper for the claims brought, which, as explained above, is not the case here. *See Isserdasani v. Noem*, No. 3:25-CV-283, 2025 WL 1118626, at *4 (W.D. Wisc. Apr. 15, 2025). There is ample evidence from Plaintiffs that a substantial part of Defendants' actions giving rise to their claims took place in this district. Thus, venue would be proper even without Defendants' express waiver.

possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *Id.* (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966)).

To determine whether Plaintiffs' claims arise out of the same series of transactions under Rule 20(a)(1)(A), the Court applies the "logical relationship" test. *Alexander*, 207 F.3d at 1323. There is a logical relationship among claims where "the same operative facts serve as the basis" for the joined claims. *Republic Health Corp. v. Lifemark Hosps. of Fla., Inc.*, 755 F.2d 1453, 1455 (11th Cir. 1985). Here, as the basis for their claims, Plaintiffs challenge Defendants' systemic termination of their SEVIS records in April 2025. These terminations were all executed through the same DHS system (SEVIS) and used nearly identical and vague termination statements, indicating a uniform administrative action instead of individualized determinations tailored to each student. The uniformity and timing of these actions demonstrate that Plaintiffs' claims stem from a common series of transactions or occurrences.[8] Therefore, the Court finds that Plaintiffs have satisfied the first prong for permissive joinder under Rule 20(a)(1)(A).

---

[8] In fact, the Court has learned through public hearings in a related case that the actions taken by Defendants in this case can be traced to a single department action, overseen by Andre Watson, an official with ICE's Counter Thread Lead Development Unit. The initiative, dubbed by immigration officials as the "Student Criminal Alien Initiative," describes a process by which 10 to 20 ICE officials ran 1.3 million names of foreign students through the National Crime Information Center ("NCIC"), a federal database that tracks criminal histories, missing

Rule 20(a)(1)(B) "does not require that *all* questions of law and fact be raised by the dispute be common." *Alexander*, 207 F.3d at 1324. Thus, claims are properly joined so long as they present "*any* question of law or fact common to all plaintiffs." Fed. R. Civ. P. 20(a)(1)(B) (emphasis added). Here, all Plaintiffs argue that their SEVIS records were terminated without individualized notice or process. Further, all Plaintiffs contest whether Defendants had the authority to terminate their SEVIS record without prior notice, whether visa revocation alone justified such termination, and whether due process protections apply to these actions. And the requested relief—reinstatement of the SEVIS record—is also commonly shared.

Defendants cite a number of cases to dispute the propriety of joinder. *See Parson v. Allstate Ins. Co.*, No. 22-cv-3962, 2023 WL 4999900, at *4 (N.D. Ill. Aug 4, 2023); *Ahmad v. Keisler*, 1:07-CV-2760-CC, 2008 WL 11337699 (N.D. Ga. July 21, 2008); *Sanders v. Callender*, No. DKC 17-1721, 2018 WL 337756, at *13 (D. Md. Jan. 9, 2018); *Ahmed v. Miller*, 452 F. Supp. 3d 721, 726 (E.D. Mich. 2021). These cases,

---

persons, and other brushes with the law, over the course of two to three weeks. The search returned an estimated 6,400 names, which were exchanged with the State Department. ICE testified to using this data to terminate the students' records in SEVIS. Kyle Cheney and Josh Gerstein, *Feds reveal how immigration squad targeted thousands of foreign students*, Politico (April 29, 2025 8:15 PM), https://www.politico.com/news/2025/04/29/immigration-foreign-students-00317437.

however, are easily distinguishable. For example, in *Ahmad v. Keisler*, the plaintiffs, lawful permanent residents from Iraq, sought to have the court adjudicate their naturalization applications and grant them United States citizenship because of the defendants' delay. *Ahmad*, 2008 WL 11337699, at *1. In ordering some of the plaintiffs' claims to be severed, the court explained that "the length of the delays and the reasons for the delays associated with the [] Plaintiffs' naturalization applications do not appear to be the same." *Id.* at *2. As such, joinder of plaintiffs in that action was not proper.

Similarly, in *Ahmed v. Miller*, plaintiffs challenged the delays and denials of their visa applications for I-130 petitioning relatives in a consular office in Yemen. *Ahmed*, 452 F. Supp. 3d at 723. There, the court explained that although "the plaintiffs identified an issue that is common to their claims, [] each plaintiff family has a separate case to plead." *Id.* at 728. Specifically, the court found that each group's claim will stand or fall on each one's individual circumstances and as such would "do very little to secure the just, speedy, and inexpensive determination of each plaintiff's individual claim." *Id.* (internal quotations omitted).

Conversely, Plaintiffs' claims here stem from a seemingly uniform action taken by Defendants without individualized notice, affecting their academic standing and immigration status. (Doc. 28 at 11). Plaintiffs' experiences present common legal questions such as the legality of Defendants' actions and the

16

applicability of due process protections. Thus, joinder under Rule 20 is proper and promotes judicial efficiency.

## III.    Preliminary Injunction

The standard for obtaining a TRO is identical to that of obtaining a preliminary injunction. *Martin v. Kemp*, 341 F. Supp. 3d 1326, 1332 (N.D. Ga. 2018) (citing *Windsor v. United States*, 379 F. App'x 912, 916–17 (11th Cir. 2010)). Therefore, to convert the TRO into a preliminary injunction, Plaintiffs, as the moving party, must establish that they have a: (1) substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) that the threatened injury to the movant outweighs the damage to the opposing party; and (4) that granting the injunction would not be adverse to the public interest. *Id.* (citing *Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003)). The balance-of-the-harms and public interest elements merge when the government is the party opposing the injunctive relief. *Swain v. Junior*, 961 F.3d 1276, 1293 (11th Cir. 2020).

### A.    Likelihood of Success on the Merits

The Eleventh Circuit instructs district courts to consider the question of whether a plaintiff has a substantial likelihood of success on the merits as "generally the most important" factor in the analysis. *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1232 (11th Cir. 2005). "A substantial likelihood of success

17

on the merits requires a showing of only *likely* or probable, rather than *certain*, success." *Id.* Plaintiffs claim that Defendants' termination of their SEVIS record was unlawful for multiple reasons. First, it constitutes agency action not in accordance with law and in excess of statutory authority under the Administrative Procedure Act (Count 1); second, it violates the Due Process Clause of the Fifth Amendment to the Constitution (Count 2); third, it violates the APA by infringing upon constitutional rights protected by the Fifth Amendment (Count 3); and fourth, it is arbitrary and capricious under administrative law (Count 4). (*See* Doc. 19-1 at 67).

The Court finds that based on the allegations in the Amended Complaint and the specific facts in Plaintiffs' 133 declarations, Plaintiffs have demonstrated a substantial likelihood of success on the merits of their claim in Counts 1 and 4: that Defendants' termination of the SEVIS registration exceeds the bounds of statutory and regulatory authority and is therefore unlawful under 5 U.S.C. § 706(2)(A), (C), and (D). The Court makes no findings as to Plaintiffs' other claims.

### 1. SEVIS Record Termination is Final Agency Action

According to the APA, "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review." 5 U.S.C. § 704. For agency action to be deemed final, it must "mark the consummation of the agency's decision-making process" and "the action must be one by which rights or

obligations have been determined or from which legal consequences will flow."
*Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). Though Defendants argue that there
"are no legal consequences to the termination of a SEVIS record," that is not borne
out by the evidence before the Court. (Doc. 16 at 12).

Plaintiffs provided the Declaration of Nusha Shishegar, a Primary
Designated School Official, as supplemental evidence. (Doc. 31-1). In the
Declaration, Ms. Shishegar explained that the termination of SEVIS has several
consequences, legal or otherwise, for F-1 students. (*Id.*). For example, if SEVIS is
terminated due to any violation of status, the student must either apply for
reinstatement or the student and dependents must leave the United States
immediately. (*Id.* ¶ 13). In addition, USCIS will not approve an OPT employment
authorization document (EAD) if a SEVIS record is terminated. (*Id.* ¶ 11).[9]

Further, "there is no statutory or regulatory requirement that a student seek
reinstatement" of student status in SEVIS, and even if a student attempts to pursue
the administrative procedure for SEVIS reinstatement, there is no mechanism to
review the propriety of the original termination. *Jie Fang*, 935 F.3d at 182; *see* C.F.R.
§ 214.2(f)(16)(ii) ("The adjudicating officer will update SEVIS to reflect USCIS'
decision. If USCIS does not reinstate the student, the student may not appeal the

---

[9] *See also* Department of Homeland Security, *Study in the States*,
https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-
and-terminations/terminate-a-student (last visited May 1, 2025).

decision."). Therefore, the termination of Plaintiffs' SEVIS record was not "of merely tentative or interlocutory nature," but rather a unilateral determination with immediate legal consequences over which Plaintiffs have no ability to seek administrative review. *Bennett*, 520 U.S. at 177–78. Accordingly, termination of the SEVIS registration constitutes a final decision reviewable under the APA. *See Jie Fang*, 935 F.3d at 182 ("The order terminating these students' F-1 visas marked the consummation of the agency's decisionmaking process, and is therefore a final order[.]").

## 2. The Privacy Act Does Not Apply

In their opposition, Defendants argue that although the APA generally waives the government's immunity, that waiver is not applicable here. (Doc. 16 at 6). Specifically, Defendants point to APA section 702, which "preserves 'other limitations on judicial review' and does not 'confer[] authority to grant relief if any other statute . . . expressly or impliedly forbids the relief which is sought.'" (Doc. 16 at 6–7 (citing *Cohen v. United States*, 650 F.3d 717, 724–25 (D.C. Cir. 2011))). Although Plaintiffs have not asserted a claim under the Privacy Act, Defendants contend that Plaintiffs' claims "clearly" implicate the Privacy Act, and that the Privacy Act provides an alternative, adequate remedy to the APA. (*Id.*).

However, Plaintiffs are not merely seeking to correct a factual error in their SEVIS records. *See Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42,

63 (2024) (explaining that the Privacy Act was passed "to protect the privacy of individuals identified in federal information systems" and "addresses the government's retention and disclosure of personal information" while allowing "individuals to seek a court order requiring it to correct its records"). Plaintiffs allege that DHS unlawfully terminated their F-1 student status by terminating their SEVIS records for an improper reason. Their allegations challenging DHS's action go well beyond seeking to correct a record that is "inaccurate, irrelevant, untimely or incomplete." *See* 5 U.S.C. § 552a(d)(2)(B). Plaintiffs are instead challenging the decision that led to the unlawful termination of their SEVIS records.

Even if there is some overlap, the United States Supreme Court has stated that "we approach federal statutes touching on the same topic with a 'strong presumption' they can exist harmoniously" and "[o]nly by carrying a 'heavy burden' can a party convince us that one statute 'displaces' a second." *Kirtz*, 601 U.S. at 63. Relying on *Kirtz*, one appellate court has determined that the "availability of a Privacy Act suit . . . does not take [the] case[] outside the scope of the waiver of sovereign immunity in § 702 of the APA and does not affect this Court's subject-matter jurisdiction over Plaintiffs' APA claims." *All. for Retired Ams. v. Bessent*, No. CV 25-0313 (CKK), 2025 WL 740401, at *19 (D.D.C. Mar. 7,

2025). Therefore, the Court agrees with Plaintiffs that Defendants' argument that the Privacy Act supplants their APA claims is a red herring.

Moreover, as Defendants point out, Plaintiffs do not have the ability to seek relief under the Privacy Act. (Doc. 16 at 8). The Privacy Act provides that an "individual" is "a citizen of the United States or an alien lawfully admitted for permanent residence." (*Id.* (citing 5 U.S.C. § 552a(a)(2))), but Plaintiffs are neither U.S. citizens nor lawful permanent residents, and therefore fall outside of the purview of the Privacy Act. Without more authority, the Court declines to find that the only statute Plaintiffs can use to seek relief is one that they are not covered by.

Finally, the relief available under the Privacy Act is actual damages. *Williams v. U.S. Citizenship & Immigr. Servs.*, No. 23-cv-61124, 2023 WL 8079947, at *6 (S.D. Fla. Nov. 21, 2023) (quoting *Stewart v. Kendall*, 578 F. Supp. 3d 18, 23 (D.D.C. 2022)); *FAA v. Cooper*, 566 U.S. 284, 298 (2012). Plaintiffs' Complaint seeks only declaratory and injunctive relief. (Doc. 11 at 67–68). As such, Defendants' argument that Plaintiffs can't seek relief under the APA fails.

### 3. The SEVIS Terminations Were Arbitrary and Capricious and Not in Accordance with the Law

Finally, because Defendants argue that the SEVIS terminations did not constitute final agency action, they fail to address Plaintiffs' substantive claim regarding whether DHS's act of terminating their record was actually "arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with the law." § 706(2)(A).

Agency action is considered arbitrary and capricious if "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S, Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983). "The 'arbitrary-and-capricious standard' requires that agency action be reasonable and reasonably explained.'" *Bidi Vapor LLC v. FDA*, 47 F.4th 1191, 1202 (11th Cir. 2022) (quoting *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021)). "It follows that agency action is lawful only if it rests 'on a consideration of the relevant factors.'" *Michigan v. EPA*, 576 U.S. 743, 750 (2015) (quoting *Motor Vehicle Mfrs.*, 463 U.S. at 43).

Defendants have had ample opportunity to provide the Court with additional information about the SEVIS terminations but have consistently failed to do so. In the two hearings the Court has had to address this issue, Defendants have not been able to articulate, clearly or otherwise, any reason why Plaintiffs' SEVIS records were terminated beyond the vague language provided in the notice given through SEVP. When asked whether Defendants could provide the Court

with any additional information about what actually happened with Plaintiffs'
SEVIS records, Defendants conceded that they could not complete the necessary
factfinding to determine what took place as to each individual Plaintiff, or even as
to the entire group of Plaintiffs. Further, Defendants' briefing fails to identify any
regulation to support DHS's ability to terminate Plaintiffs' SEVIS record in the
manner it was done here.

Defendants have altogether failed to suggest any lawful grounds for
termination of Plaintiffs' SEVIS record. *Motor Vehicle Mfrs.*, 463 U.S. at 50.
Defendants' failure to provide a single plausibly lawful explanation for its action
is the exact circumstance contemplated by the arbitrary and capricious standard.
*Id.* Accordingly, Plaintiffs are likely to prevail on the claim that the agency action
is arbitrary and capricious for failing to articulate a satisfactory explanation for its
action including a rational connection between the facts found and the choice
made. *Id.* at 43.

The Court concludes that Plaintiffs are likely to show that DHS's authority
to terminate F-1 student status is narrowly circumscribed by regulation to three
circumstances: by the revocation of a waiver authorized on his or her behalf under
section 212(d)(3) or (4) of the Act; by the introduction of a private bill to confer
permanent resident status on such alien; or, pursuant to notification in the Federal
Register, on the basis of national security, diplomatic, or public safety reasons. 8

24

C.F.R. § 214.1(d); *see also Jie Fang*, 935 F.3d at 185 n.100 (explaining that the ability

to terminate F-1 status is limited by § 214.1(d)). And since none of those conditions

are applicable here, Plaintiffs are likely to show that Defendants' termination of

their SEVIS records and F-1 status was not in compliance with 8 C.F.R. § 214.1(d)

and was arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law under 5 U.S.C. § 706(2)(A).

### B.    Substantial Threat of Irreparable Injury

Plaintiffs must establish there is a threat of irreparable harm if injunctive

relief is not granted, and that such harm is "harm that could not be sufficiently

compensated by money damages or avoided by a later decision on the merits."

*Canon, Inc. v. GCC Int'l, Ltd.*, 263 F. App'x 57, 62 (Fed. Cir. 2008).

Given the number of Plaintiffs, the Court will not include a description of

each harm described by Plaintiffs in the Amended Complaint and the declarations

accompanying the Amended TRO Motion. (*See* Docs. 11, 19). Nonetheless,

Plaintiffs have demonstrated that they face several forms of irreparable harm in

the absence of temporary relief. Plaintiffs declare that as a result of the SEVIS

terminations, they will lose scholarships, career opportunities, research grants,

access to education, and the ability to apply for OPT. (*See* Doc. 4-2). Plaintiffs fear

that they will abruptly have to leave behind family, cancel marriage plans, and

abandon their communities in order to avoid detention or being labeled a national

security or foreign policy threat. Many Plaintiffs are mere weeks away from attaining their degrees. (Doc. 4-2 at 34, 40). The loss of timely academic progress alone is sufficient to establish irreparable harm. Additionally, all Plaintiffs report high levels of stress and anxiety resulting from the uncertainty around their futures. If Plaintiffs cannot work or study, they cannot remain in the United States legally and will therefore be subjected to removal proceedings or forced to return to their native countries on their own.

Plaintiffs' fears are not speculative, as DHS's own public-facing guidance states that a person whose SEVIS record is terminated faces the following consequences: "loses all on- and/or off-campus employment authorization," the student "cannot re-enter the United States on the terminated SEVIS record," "Immigration and Customs Enforcement (ICE) agents may investigate to confirm the departure of the student," and "[a]ny associated F-2 or M-2 dependent records are terminated."[10]

In addition, Plaintiffs have shown that as a result of the termination of their SEVIS records, they will be unable to continue their classes, research programs, and/or Ph.D. programs. This threat to Plaintiffs' ability to complete their degrees cannot be redressed and constitutes irreparable harm in light of the facts in this

---

[10] *See* Dep't of Homeland Security, *SEVIS Help Hub: Terminate A Student*, https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student (last visited May 1, 2025).

case. *See Gegas v. St. Matthew's Univ. School of Med.*, No. 6:22-cv-2299-PGB-EJK, 2023 WL 6294410, at *5 (M.D. Fla. Sept. 4, 2023) (collecting cases where various courts have found that a forced delay in graduation can demonstrate irreparable harm); *Doe v. Noem*, No. 2:25-CV-00633-DGE, 2025 WL 1141279, at *8 (W.D. Wash. Apr. 17, 2025) (finding that the plaintiff had demonstrated that he would suffer irreparable harm absent injunction because he "is currently unable to continue in his academic work, and should that persist, he faces loss of grants and an inability to complete his degree."); *Liu v. Noem*, No. 25-cv-133-SE, 2025 WL 1233892, at *11 (D.N.H. Apr. 29, 2025) (finding that plaintiff's "inability to continue his research because of DHS's termination of F-1 status" has significant and irreparable consequences for his academic trajectory and thus constitutes irreparable harm).

Some courts have specifically held that loss of opportunity to participate in post-secondary education programs is an irreparable harm. *See Maria v. Loyola Univ. of Chi. Strict Sch. Of Med.*, No. 24 C 1698, 2025 WL 96482, at *8 (N.D. Ill. Jan. 14, 2025) (accepting that loss of opportunity to participate in psychiatry residency is an irreparable harm, but denying injunction on other grounds); *Lujan v. U.S. Dep't of Educ.*, 664 F. Supp. 3d 701, 721 (W.D. Tex. 2023) (finding that erroneous loss of even one point on Fulbright scholarship application grading would be an irreparable harm, due to loss of opportunity to obtain scholarship). Under these unique circumstances where Plaintiffs' continued work and lawful immigration

status are interlinked, the prospect of Plaintiffs losing their grant-funded work as doctoral candidates or otherwise are likewise irreparable. *Doe*, 2025 WL 1141279, at *7 (citing *Karakozova v. Univ. of Pittsburgh*, No. 09CV0458, 2009 WL 1652469, at *4 (W.D. Pa. June 11, 2009) for the proposition that a research assistant on an H-1B visa could show irreparable harm from loss of position due to its link to her immigration status).

Further, the evidence establishes that Plaintiffs have suffered and will continue to suffer significant monetary losses, including loss of scholarships traceable to the termination of their SEVIS records, that are not recoverable, which constitutes irreparable harm. *See Georgia v. President of the United States*, 46 F.4th 1283, 1302 (11th Cir. 2022) (stating that "unrecoverable monetary loss is an irreparable harm"); *Alabama v. U.S. Sec'y of Educ.* No. 24-12444, 2024 WL 3981994, at *4 (11th Cir. Aug. 22, 2024) (same). Further, economic losses such as Plaintiffs' can be considered irreparable harm because there are no adequate remedies at law to recover for their damages. *See, e.g., Chef Time 1520 LLC v. Small Bus. Admin.*, 646 F. Supp. 3d 101, 115–16 (D.D.C. 2022) (collecting cases supporting the conclusion that the lack of availability of money damages for APA claims weighs in favor of a finding of irreparable harm); *Nat'l Mining Ass'n v. Jackson*, 768 F. Supp. 2d 34, 52 (D.D.C. 2011) ("[I]f a movant seeking a preliminary injunction will be unable to sue to recover any monetary damages against a government agency in the future

because of, among other things, sovereign immunity, financial loss can constitute irreparable injury." (quotations omitted)).

Finally, Plaintiffs will accrue unlawful presence as long as they lack lawful F-1 status and face possible detention or deportation as a result.[11] (Doc. 19-1 at 72). Once it reaches a certain point, unlawful presence time will bar future admission and re-entry to the United States. *See* 8 U.S.C. § 1182(a)(9)(B). Other courts have found that the accrual of unlawful presence time under these circumstances is an irreparable harm because it may subject a person to lengthy re-entry bars that are not judicially reviewable. *Doe*, 2025 WL 1141279, at *8 (collecting cases).

These harms could not be sufficiently compensated with monetary damages or avoided by a later decision on the merits. *See Isserdasani*, 2025 WL 1118626, at *6 (granting a motion for a temporary restraining order on an APA claim based on the termination of an F-1 international student's record in SEVIS); *Roe v. Noem*, No. 25-40-BU-DLC, 2025 WL 1114694, at *4 (D. Mont. Apr. 15, 2025) (same);

---

[11] In related cases, Government defendants have taken the position that individuals with F-1 status are not out of status once the SEVIS record has been terminated. However, as described previously, the Government's own website states that there is no grace period for individuals who are out of status. *See* Dep't of Homeland Security, *SEVIS Help Hub: Terminate A Student*, https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student (last visited May 1, 2025). Though it may not be the policy of Defendants at this moment to consider a nonimmigrant with a terminated SEVIS record unlawfully present, policies change. The Court cannot say with certainty that absent the restoration of the SEVIS records, the Plaintiffs would not be accruing unlawful presence.

*Ratsantiboon v. Noem*, No. 25-CV-01315, 2025 WL 1118645, at *3 (D. Minn. Apr. 15, 2025) (same); *Hinge v. Lyons*, No. 25-1097, 2025 WL 1134966, at *6 (D.D.C. Apr. 15, 2025) (same); *Liu*, 2025 WL 1233892, at *10 (same).

The Court is aware of the public filings in other SEVIS cases that ICE announced a new policy generally applicable to F-1 nonimmigrant students and their SEVIS records. *See Liu*, 2025 WL 1233892, at *2. As a result of this new policy, the Court held a telephone conference on April 30, 2025 to determine whether Plaintiffs' concerns were now moot. During the conference, Defendants took the position that the policy was not final, and thus it was not clear the effect the policy would have on the Plaintiffs in this case.[12] As such, Plaintiffs concerns are not moot, and they still face a real threat of irreparable harm.

## C.    Balance of Harms and Public Interest

The third and fourth preliminary injunction requirements—that the threatened injury to the movant outweighs any harm to the non-movant and that an injunction is not adverse to the public interest—merge when, as here, the government is the party opposing the motion. *Koe v. Noggle*, 688 F. Supp. 3d 1321, 1358 (N.D. Ga. 2023) (citing *Swain v. Junior*, 958 F.3d 1081, 1091 (11th Cir. 2020)). "The third element" of that analysis "looks to the competing claims of injury,

---

[12] At a previous hearing Defendants suggested that policies do not confer the same rights as law and regulations do. The Court appreciates that Defendants did not rely on this new policy to argue otherwise.

requiring the court to consider the effect on each party of the granting or the withholding of the requested relief." *De La Fuente v. Merrill*, 214 F. Supp. 3d 1241, 1249 (M.D. Ala. 2016) (quoting *Winter v. Nat. Res. Defense Council, Inc.*, 555 U.S. 7, 24 (2008)) (internal quotations omitted).

For the reasons set forth above, Plaintiffs have satisfied both factors. First, the balance of harms weigh in Plaintiffs' favor. Plaintiffs stand to lose their lawful status, access to education, and future career prospects. By contrast, the temporary nature of the requested relief poses minimal harm to Defendants. Defendants assert that SEVIS does not control or even necessarily reflect whether a student has lawful nonimmigrant status. (Doc. 16 at 2). If that is so, then restoring Plaintiffs to the status quo before their SEVIS records were terminated has no effect on the Executive's "control over immigration," Defendants' only stated harm. (*Id.* (citing *El Rescate Legal Servs., Inc. v. Exec. Off. of Immigr. Review*, 959 F.2d 742, 750 (9th Cir. 1992)). Considering the record evidence as discussed in the previous sections of this Order, the Court determines that the imminent risk of irreparable harm to Plaintiffs flowing from the termination of their SEVIS records outweigh any harm Defendants will experience from the preliminary injunction.

Plaintiffs have repeatedly emphasized that they are not seeking to limit the Executive's power; instead, they are asking Defendants to exercise that power in accordance with their own laws and regulations. And the Court agrees that there

is substantial public interest in ensuring government agencies abide by federal laws even when they are pursuing their prerogatives. *See Kansas v. U.S. Dep't of Labor*, 749 F. Supp. 3d 1363, 1380 (S.D. Ga. Aug. 26, 2024) (citing *Louisiana v. Biden*, 55 F.4th 1017, 1035 (5th Cir. 2022)); *see also Florida v. Dep't of Health and Hum. Servs.*, 19 F.4th 1271, 1315 (11th Cir. 2021) (Lagoa, J., dissenting) ("[T]here is no public interest in the perpetuation of unlawful agency action. To the contrary, there is substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." (quoting *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016))).

Lastly, the Court addresses Defendants' argument that Plaintiffs are "not seeking a prohibitory injunction to preserve the status quo," but are "instead seek[ing] a mandatory injunction to order DHS to reverse its termination of Plaintiff's SEVIS record." (Doc. 16 at 2). Courts have long held that the status quo for the purposes of considering a temporary restraining order or preliminary injunction refers to the last peaceable uncontested status existing between the parties before the dispute developed. *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974) ("If the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation so as to prevent the injury, either by returning to the last uncontested status quo between the parties, by the issuance of a mandatory injunction, or by allowing the parties to take

proposed action that the court finds will minimize the irreparable injury."
(citations omitted));[13] *see also Nutra Health, Inc. v. HD Holdings Atlanta, Inc.*, No.
1:19-cv-05199-RDC, 2021 WL 5029427, at *2 (N.D. Ga. June 29, 2021) (citing *O
Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 1013 (10th Cir.
2004) for the proposition that "[s]tatus quo does not mean the situation existing at
the moment the lawsuit is filed, but the last peaceable uncontested status existing
between the parties before the dispute developed.").

Accordingly, the Court concludes that all four factors favor granting
Plaintiffs' request for a preliminary injunction.

### D.    Security

Finally, the Court exercises its discretion to waive the bond requirement set
forth in Rule 65(c) of the Federal Rules of Civil Procedure. *BellSouth Telecomms. Inc.
v. MCImetro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005);
*Mama Bears of Forsyth Cnty. v. McCall*, 642 F. Supp. 3d 1338, 1359–61 (N.D. Ga.
2022).

---

[13] The Eleventh Circuit has adopted as binding precedent all of the decisions of the
former Fifth Circuit handed down prior to the close of business on September 30,
1981. *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

### Conclusion

Based on the foregoing, it is **ORDERED** that Plaintiffs' Motion for Temporary Restraining Order and Amended Motion for Temporary Restraining Order (Docs. 4, 19) is **GRANTED** and the TRO is converted into a preliminary injunction.

The Court finds that Plaintiffs are likely to succeed on the merits as to their claims that Defendants violated the APA by acting arbitrary, capriciously, and not in accordance with law by terminating Plaintiffs' SEVIS records. Furthermore, Plaintiffs have demonstrated a substantial threat of irreparable harm. The Court also finds that the balance of harms and the public interest in ensuring Defendants follow the law weigh in favor of injunctive relief.

The Court previously ordered that "Defendants shall reinstate Plaintiffs' student status and SEVIS authorization, retroactive to March 31, 2025." (Doc. 23 at 15). In order to comply, "ICE manually entered a system change comment stating the following: Status changed per court order and ICE direction. Retroactive to March 31, 2025." (Doc. 29 at 1). To maintain Plaintiffs' status quo as lawful nonimmigrants while this case is pending, Defendants are enjoined from unlawfully terminating Plaintiffs' SEVIS records or reversing the reinstatement of Plaintiffs' SEVIS records absent further Court order. To avoid any confusion, the Court notes that this Order does not enjoin Defendants from taking lawful action

34

that could change Plaintiffs' status; the Court only enjoins Defendants from the

unlawful termination of Plaintiffs' SEVIS records.

**SO ORDERED** this 2nd day of May, 2025.

Victoria Marie Calvert
United States District Judge